**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
CASE NO.

OMEGA SA,

       Plaintiff,

vs.

THE INDIVIDUALS, BUSINESS ENTITIES,
AND UNINCORPORATED ASSOCIATIONS
IDENTIFIED ON SCHEDULE "A,"

       Defendants.

_____/

## COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

Plaintiff, Omega SA ("Omega" or "Plaintiff") hereby sues Defendants, the Individuals, Business Entities, and Unincorporated Associations doing business as the e-commerce store names identified on Schedule "A" (the "Defendants"). Defendants are promoting, selling, offering for sale, and/or distributing goods using counterfeits and confusingly similar imitations of Omega's trademarks within this district through various commercial Internet based e-commerce stores operating under the seller names identified on Schedule "A" (the "Selling E-commerce Store Names"). Additionally, certain Defendants have set up a transaction laundering scheme with intermediary or "middleman" e-commerce stores, including at least the intermediary e-commerce stores identified on Schedule "A" (the "Intermediary E-commerce Store Names"), re-routing the payment processing for purchases of counterfeit Omega-branded goods from the Selling E-commerce Store Names to the Intermediary E-commerce Store Names (the Selling E-commerce Store Names and the Intermediary E-commerce Store Names are collectively referred to herein as the "E-commerce Store Names"). In support of its claims, Omega alleges as follows:

## JURISDICTION AND VENUE

1.      This is an action for damages and injunctive relief for federal trademark counterfeiting and infringement, false designation of origin, common law unfair competition and common law trademark infringement pursuant to 15 U.S.C. §§ 1114, 1116, and 1125(a), The All Writs Act, 28 U.S.C. § 1651(a), and Florida's common law. Accordingly, this Court has subject matter jurisdiction over this action pursuant to 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331 and 1338. This Court has supplemental jurisdiction pursuant to 28 U.S.C. §1367 over Omega's state law claims because those claims are so related to the federal claims that they form part of the same case or controversy.

2.      Defendants are subject to personal jurisdiction in this district, because they direct business activities toward and conduct business with consumers throughout the United States, including within the State of Florida and this district through at least their e-commerce stores accessible and doing business in Florida and operating under their E-commerce Store Names. Alternatively, based on their overall contacts with the United States, Defendants are subject to personal jurisdiction in this district pursuant to Federal Rule of Civil Procedure 4(k)(2) because (i) Defendants are not subject to jurisdiction in any state's court of general jurisdiction; and (ii) exercising jurisdiction is consistent with the United States Constitution and laws.

3.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391 since Defendants are, upon information and belief, non-resident in the United States and engaged in infringing activities and causing harm within this district by advertising, offering to sell, selling and/or shipping infringing products into this district.

## THE PLAINTIFF

4.      Omega is a corporation organized under the laws of Switzerland with its principal place of business located at Jakob-Stämpfli-Strasse 96, CH-2502 Biel/Bienne, Switzerland. Omega manufactures, markets, and sells goods throughout the world, including within this district, under multiple world-famous common law and federally registered trademarks, including the trademarks identified in Paragraph 15 below.

5.      Omega's goods are sold through various channels of trade within the State of Florida, including this district. Defendants, through the offer to sell and sale of counterfeit and infringing versions of Omega branded products, are directly and unfairly competing with Omega's economic interests in the United States, including within the State of Florida and causing Omega irreparable harm and damage within this jurisdiction.

6.      Like many other famous trademark owners, Omega suffers ongoing daily and sustained violations of its trademark rights at the hands of counterfeiters and infringers, such as Defendants herein, who wrongfully reproduce and counterfeit Omega's trademarks for the twin purposes of (i) duping and confusing the consuming public and (ii) earning substantial profits across their e-commerce stores. The natural and intended byproduct of Defendants' combined actions is the erosion and destruction of the goodwill associated with Omega's name and trademarks, as well as the destruction of the legitimate market sector in which it operates.

7.      To combat the indivisible harm caused by the concurrent actions of Defendants and others engaging in similar conduct, each year Omega expends significant resources in connection with trademark enforcement efforts, including legal fees, investigative fees, and support mechanisms for law enforcement. The exponential growth of counterfeiting over the Internet, including through online marketplace and social media platforms, has created an environment that

3

requires companies, such as Omega, to expend significant resources across a wide spectrum of efforts in order to protect both consumers and itself from the confusion and the erosion of the goodwill embodied in Omega's brand.

## THE DEFENDANTS

8.      Defendants are individuals, business entities of unknown makeup, or unincorporated associations each of whom, upon information and belief, either reside and/or operate in foreign jurisdictions, redistribute products from the same or similar sources in those locations, and/or ship their goods from the same or similar sources in those locations to consumers as well as shipping and fulfillment centers within the United States. Defendants have the capacity to be sued pursuant to Federal Rule of Civil Procedure 17(b). Defendants target their business activities toward consumers throughout the United States, including within this district, through at least, the operation of commercial Internet based e-commerce stores under their Selling E-commerce Store Names.

9.      Defendants operate the Selling E-commerce Store Names in tandem with the payment Intermediary E-commerce Store Names thereby creating an interconnected ecosystem.

10.     Defendants are the past and/or present controlling forces behind the operation of the E-commerce Store Names and the sale of products using counterfeits and infringements of Omega's trademarks as described herein.

11.     Defendants directly engage in unfair competition with Omega by advertising, offering for sale, and selling goods each using counterfeits and infringements of one or more of Omega's trademarks to consumers within the United States and this district through the e-commerce stores using, at least, their E-commerce Store Names, and additional e-commerce stores or aliases not yet known to Omega. Defendants have purposefully directed some portion of their

unlawful activities toward consumers in the State of Florida through the advertisement, offer to sell, sale, and/or shipment of counterfeit and infringing Omega branded goods into the State.

12.     Defendants have registered, established, or purchased, and maintained their E-commerce Store Names. Defendants may have engaged in fraudulent conduct with respect to the registration of their E-commerce Store Names by providing false and/or misleading information during the registration or maintenance process related to their respective E-commerce Store Names. Many Defendants have registered and/or maintained their E-commerce Store Names for the sole purpose of engaging in unlawful infringing and counterfeiting activities.

13.     Defendants will likely continue to register or acquire new e-commerce store names or aliases, as well as related payment accounts, for the purpose of selling and offering for sale goods using counterfeit and confusingly similar imitations of one or more of Omega's trademarks unless preliminarily and permanently enjoined.

14.     Defendants' E-commerce Store Names, associated payment accounts, and any other alias e-commerce store names used in connection with the sale of counterfeit and infringing goods using one or more of Omega's trademarks, are essential components of Defendants' online activities and are the means by which Defendants further their counterfeiting and infringement scheme and cause harm to Omega. Moreover, Defendants use Omega's famous name and/or trademarks to drive Internet consumer traffic to the e-commerce stores operating under their E-commerce Store Names, thereby increasing the value of their E-commerce Store Names and decreasing the size and value of Omega's legitimate marketplace at Omega's expense.

## COMMON FACTUAL ALLEGATIONS

### Omega's Rights

15.     Omega is the owner of the following trademarks which are valid and registered on the Principal Register of the United States Patent and Trademark Office (the "Omega Marks"):

| Trademark | Registration Number | Registration Date | Class / Goods |
|---|---|---|---|
| SEAMASTER | 556,602 | March 25, 1952 | IC 014. Watches, watch parts and watch movements. |
| **OMEGA** | 566,370 | November 4, 1952 | IC 014. Watches and parts thereof. |
| Ω OMEGA | 578,041 | July 28, 1953 | IC 014. wrist watches with or without straps, bands or bracelets, chronometers, chronographs. |
| SPEEDMASTER | 672,487 | January 13, 1959 | IC 014. Watches and clocks. |
| Ω | 734,891 | July 24, 1962 | IC 014. Timepieces and Parts Thereof. |
| Ω OMEGA | 1,290,661 | August 21, 1984 | IC 014. Watch Cases. |
| PLANET OCEAN | 3,085,659 | April 25, 2006 | IC 014. Watches and watch parts. |
| SEAMASTER | 3,640,080 | June 16, 2009 | IC 014. Jewelry, horological and chronometrical instruments. |
| CO-AXIAL | 4,442,192 | December 3, 2013 | IC 014. Horological and chronometric instruments. |
| Ω OMEGA | 5,094,915 | December 6, 2016 | IC 014. Horological and chronometric instruments and parts for the aforesaid goods; accessories namely, watch chains, presentation cases for watches and cases for watches. |

6

| CO-AXIAL MASTER CHRONOMETER | 5,266,563 | August 15, 2017 | IC 014. Horological and chronometric instruments. |
|---|---|---|---|

The Omega Marks are used in connection with the manufacture and distribution of high-quality goods in the category identified above. True and correct copies of the Certificates of Registration for the Omega Marks are attached hereto as Composite Exhibit "1."

16.     Long before Defendants began their infringing activities complained of herein, the Omega Marks have been used by Omega in interstate commerce to identify and distinguish Omega's high-quality goods for an extended period of time and serve as symbols of Omega's quality, reputation and goodwill.

17.     Omega has expended substantial resources developing, advertising, and otherwise promoting the Omega Marks. Omega and related companies have spent significant monetary resources to extensively advertise and promote products under the Omega Marks in magazines, newspapers, in stores, on the Internet and in other media worldwide, including Omega's official website, www.omegawatches.com. The Omega Marks qualify as famous marks as that term is used in 15 U.S.C. §1125(c)(1).

18.     Further, Omega extensively uses, advertises, and promotes the Omega Marks in the United States in connection with the sale of high-quality goods. As a result, the Omega Marks are widely recognized trademarks in the United States, and the trademarks have achieved secondary meaning among consumers as identifiers of high-quality goods.

19.     Omega has carefully monitored and policed the use of the Omega Marks and has never assigned or licensed the Omega Marks to any of the Defendants.

20.     Genuine goods using the Omega Marks are widely legitimately advertised and promoted by Omega and related companies, authorized distributors and unrelated third parties via

the Internet. Visibility on the Internet, particularly via Internet search engines is important to Omega's overall marketing and consumer education efforts. Thus, Omega and related companies expend significant monetary and other resources on Internet marketing and consumer education, including search engine optimization and search engine marketing strategies. Those strategies allow Omega and its authorized retailers to educate consumers fairly and legitimately about the value associated with the Omega Marks and the goods sold thereunder.

### **Defendants' Infringing Activities**

21.     Defendants are each promoting, advertising, distributing, offering for sale and/or selling goods in interstate commerce using counterfeits and confusingly similar imitations of one or more of the Omega Marks (the "Counterfeit Goods") through at least the e-commerce stores operating under their Selling E-commerce Store Names. Specifically, Defendants are using the Omega Marks to initially attract online consumers and drive them to Defendants' e-commerce stores operating under their Selling E-commerce Store Names. Defendants are each using identical copies of one or more of the Omega Marks for different quality goods. Omega has used the Omega Marks extensively and continuously before Defendants began offering counterfeit and confusingly similar imitations of Omega's goods.

22.     Defendants' Counterfeit Goods are of a quality substantially different than that of Omega's genuine goods. Defendants are actively using, promoting and otherwise advertising, distributing, offering for sale and/or selling substantial quantities of their Counterfeit Goods with the knowledge and intent that such goods will be mistaken for the genuine, high-quality goods offered for sale by Omega despite Defendants' knowledge that they are without authority to use the Omega Marks. Defendants' actions are likely to cause confusion of consumers at the time of

initial interest, sale, and in the post-sale setting, who will believe Defendants' goods are genuine goods originating from, associated with, and/or approved by Omega.

23.     Defendants advertise their e-commerce stores, including their Counterfeit Goods, to the consuming public via at least the e-commerce stores under their E-commerce Store Names. In so doing, Defendants improperly and unlawfully use the Omega Marks without Omega's authority.

24.     Most Defendants are concurrently employing and benefiting from substantially similar advertising and marketing strategies based, in large measure, upon an unauthorized use of counterfeits and infringements of one or more of the Omega Marks. Specifically, Defendants are using counterfeits and infringements of one or more of the Omega Marks to make their e-commerce stores selling unlawful goods appear more relevant and attractive to consumers searching for Omega's related goods and information online. By their actions, Defendants are contributing to the creation and maintenance of an unlawful marketplace operating in parallel to the legitimate marketplace for Omega's genuine goods. Defendants are causing individual, concurrent and indivisible harm to Omega and the consuming public by (i) depriving Omega of its right to fairly compete for space online and within search engine results and reducing the visibility of Omega's genuine goods on the World Wide Web, (ii) causing an overall degradation of the value of the goodwill associated with the Omega Marks, and (iii) increasing Omega's overall cost to market its goods and educate consumers about its brand via the Internet.

25.     Additionally, Defendants are using their Intermediary E-commerce Store Names to reroute the payment processing for the sale of goods bearing counterfeits and confusingly similar imitations of Omega's trademarks purchased through the Selling E-commerce Store Names. Because the Intermediary E-commerce Store Names themselves do not show counterfeit Omega

branded goods offered for sale, Defendants can create an aura of legitimacy and evade detection of payment origination to provide payment processors and related financial institutions with the appearance that the goods they are selling are non-infringing items. Ultimately, the Intermediary E-commerce Store Names allow Defendants to circumvent financial regulations by creating a separate payment microecosystem for the sole purpose of managing payment processing for the Selling E-commerce Store Names.

26.     Defendants are concurrently conducting and targeting their counterfeiting and infringing activities toward consumers and likely causing unified harm within this district and elsewhere throughout the United States. As a result, Defendants are defrauding Omega and the consuming public for Defendants' own benefit.

27.     At all times relevant hereto, Defendants had full knowledge of Omega's ownership of the Omega Marks, including its exclusive right to use and license such intellectual property and the goodwill associated therewith.

28.     Defendants' use of the Omega Marks, including the promotion and advertisement, reproduction, distribution, sale, and offering for sale of their Counterfeit Goods, is without Omega's consent or authorization.

29.     Defendants are engaging in the above-described unlawful counterfeiting and infringing activities knowingly and intentionally or with reckless disregard or willful blindness to Omega's rights for the purpose of trading on Omega's goodwill and reputation.

30.     Defendants' above identified infringing activities are likely to cause confusion, deception and mistake in the minds of consumers before, during, and after the time of purchase. Moreover, Defendants' wrongful conduct is likely to create a false impression and deceive

consumers, the public, and the trade into believing there is a connection or association between Omega's genuine goods and Defendants' Counterfeit Goods, which there is not.

31.    Given the visibility of Defendants' various e-commerce stores and the similarity of their concurrent actions, it is clear Defendants are either affiliated, or at a minimum, cannot help but know of each other's existence and the unified harm likely to be caused to Omega and the overall consumer market in which it operates because of Defendants' concurrent actions.

32.    Although some Defendants may be physically acting independently, they may properly be deemed to be acting in concert because the combined force of their actions serves to multiply the harm caused to Omega.

33.    Defendants' payment and financial accounts, including but not limited to those specifically set forth on Schedule "A," are being used by Defendants to accept, receive, and deposit profits from their trademark counterfeiting and infringing, and unfairly competitive activities connected to their E-commerce Store Names and any other alias e-commerce store names they use and/or control.

34.    Further, Defendants, upon information and belief, are likely to transfer or secret their assets to avoid payment of any monetary judgment awarded to Omega.

35.    Omega has no adequate remedy at law.

36.    Omega is suffering irreparable injury and has suffered substantial damages because of Defendants' unauthorized and wrongful use of the Omega Marks. If Defendants' counterfeiting and infringing, and unfairly competitive activities are not preliminarily and permanently enjoined by this Court, Omega and the consuming public will continue to be harmed while Defendants wrongfully earn a substantial profit.

37.     The harm and damage sustained by Omega has been directly and proximately caused by Defendants' wrongful reproduction, use, advertisement, promotion, offers to sell, and sale of their Counterfeit Goods.

## COUNT I - TRADEMARK COUNTERFEITING AND INFRINGEMENT PURSUANT TO § 32 OF THE LANHAM ACT (15 U.S.C. § 1114)

38.     Omega hereby adopts and re-alleges the allegations set forth in Paragraphs 1 through 37 above.

39.     This is an action for trademark counterfeiting and infringement against Defendants based on their use of counterfeit and confusingly similar imitations of the Omega Marks in commerce in connection with the promotion, advertisement, distribution, offering for sale and/or sale of the Counterfeit Goods.

40.     Defendants are promoting and otherwise advertising, selling, offering for sale, and distributing goods using counterfeits and/or infringements of one or more of the Omega Marks. Defendants are continuously infringing and inducing others to infringe the Omega Marks by using one or more of the Omega Marks to advertise, promote, offer to sell and/or sell counterfeit and infringing versions of Omega's branded goods.

41.     Defendants' concurrent counterfeiting and infringing activities are likely to cause and are causing confusion, mistake, and deception among members of the trade and the general consuming public as to the origin and quality of Defendants' Counterfeit Goods.

42.     Defendants' unlawful actions have caused and are continuing to cause unquantifiable damage and irreparable harm to Omega and are unjustly enriching Defendants with profits at Omega's expense.

43.     Defendants' above-described unlawful actions constitute counterfeiting and infringement of the Omega Marks in violation of Omega's rights under § 32 of the Lanham Act, 15 U.S.C. § 1114.

44.     Omega has no adequate remedy at law. Omega has suffered and will continue to suffer irreparable injury and damages because of Defendants' above-described activities if Defendants are not preliminarily and permanently enjoined. Additionally, Defendants will continue to wrongfully profit from their unlawful activities.

## COUNT II - FALSE DESIGNATION OF ORIGIN
## PURSUANT TO § 43(a) OF THE LANHAM ACT (15 U.S.C. § 1125(a))

45.     Omega hereby adopts and re-alleges the allegations set forth in Paragraphs 1 through 37 above.

46.     Defendants' Counterfeit Goods bearing, offered for sale, and sold using copies of one or more of  the Omega Marks have been widely advertised and offered for sale throughout the United States via the Internet.

47.     Defendants' Counterfeit Goods bearing, offered for sale, and sold using copies of the Omega Marks are virtually identical in appearance to Omega's genuine goods. However, Defendants' Counterfeit Goods are different in quality. Accordingly, Defendants' activities are likely to cause confusion among consumers as to at least the origin or sponsorship of their Counterfeit Goods.

48.     Defendants have each used in connection with their advertisement, offer for sale, and sale of the Counterfeit Goods, false designations of origin and false descriptions and representations, including words or symbols and trade dress which falsely describe or represent such goods and have caused such goods to enter commerce in the United States with full

knowledge of the falsity of such designations of origin and such descriptions and representations, all to Omega's detriment.

49.     Defendants have each authorized infringing uses of one or more of the Omega Marks in Defendants' advertisement and promotion of their counterfeit and infringing branded goods. Some Defendants have misrepresented to members of the consuming public that the Counterfeit Goods being advertised and offered for sold by them are genuine, non-infringing goods.

50.     Additionally, many Defendants are simultaneously using counterfeits and infringements of the Omega Marks to unfairly compete with Omega and others for space on the World Wide Web. Defendants are thereby jointly (i) depriving Omega of valuable marketing and educational space online which would otherwise be available to Omega, and (ii) reducing the visibility of Omega's genuine goods on the World Wide Web and across social media platforms.

51.     Defendants' above-described actions are in violation of Section 43(a) of the Lanham Act, 15 U.S.C. §1125(a).

52.     Omega has no adequate remedy at law. Omega has suffered and will continue to suffer both individual and indivisible injury and damages caused by Defendants' concurrent conduct if Defendants are not preliminarily and permanently enjoined. Additionally, Defendants will continue to wrongfully profit from their unlawful activities.

## COUNT III - COMMON LAW UNFAIR COMPETITION

53.     Omega hereby adopts and re-alleges the allegations set forth in Paragraphs 1 through 37 above.

54.     This is an action against Defendants based on their promotion, advertisement, distribution, offering for sale, and/or sale of goods using or bearing marks which are virtually identical to one or more of the Omega Marks in violation of Florida's common law of unfair competition.

55.     Specifically, Defendants are each promoting and otherwise advertising, selling, offering for sale, and distributing infringing and counterfeit versions of Omega's branded goods. Defendants are also each using counterfeits and infringements of one or more of the Omega Marks to unfairly compete with Omega for visibility on the World Wide Web.

56.     Defendants' infringing activities are likely to cause and are causing confusion, mistake, and deception among consumers as to the origin and quality of Defendants' e-commerce stores as a whole and all products sold therein by their use of the Omega Marks.

57.     Omega has no adequate remedy at law. Omega has suffered and will continue to suffer irreparable injury and damages because of Defendants' above-described activities if Defendants are not preliminarily and permanently enjoined. Additionally, Defendants will continue to wrongfully profit from their unlawful activities.

## **COUNT IV - COMMON LAW TRADEMARK INFRINGEMENT**

58.     Omega hereby adopts and re-alleges the allegations set forth in Paragraphs 1 through 37 above.

59.     Omega is the owner of all common law rights in and to the Omega Marks.

60.     This is an action for common law trademark infringement against Defendants based on their promotion, advertisement, offering for sale, and/or sale of their Counterfeit Goods using one or more of the Omega Marks.

61.     Specifically, each Defendant is promoting and otherwise advertising, distributing, offering for sale, and selling goods using and bearing infringements of one or more of the Omega Marks.

62.     Defendants' infringing activities are likely to cause and are causing confusion, mistake, and deception among consumers as to the origin and quality of Defendants' Counterfeit Goods bearing the Omega Marks.

63.     Omega has no adequate remedy at law. Omega has suffered and will continue to suffer irreparable injury and damages because of Defendants' above-described activities if Defendants are not preliminarily and permanently enjoined. Additionally, Defendants will continue to wrongfully profit from their unlawful activities.

## PRAYER FOR RELIEF

64.     WHEREFORE, Omega demands judgment on all Counts of this Complaint and an award of equitable relief and monetary relief against Defendants as follows:

        a.      Entry of temporary, preliminary, and permanent injunctions pursuant to 15 U.S.C. § 1116, 28 U.S.C. § 1651(a), The All Writs Act, and Federal Rule of Civil Procedure 65 enjoining Defendants, their agents, representatives, servants, employees, and all those acting in concert or participation therewith, from manufacturing or causing to be manufactured, importing, advertising or promoting, distributing, selling or offering to sell their Counterfeit Goods; from infringing, counterfeiting, or diluting the Omega Marks; from using the Omega Marks, or any mark or design similar thereto, in connection with the sale of any unauthorized goods; from using any logo, trade name or trademark or design that may be calculated to falsely advertise the services or goods of Defendants as being sponsored by, authorized by, endorsed by, or in any way associated with Omega; from falsely representing themselves as being connected with Omega,

through sponsorship or association, or engaging in any act that is likely to falsely cause members of the trade and/or of the purchasing public to believe any goods or services of Defendants are in any way endorsed by, approved by, and/or associated with Omega; from using any reproduction, counterfeit, infringement, copy, or colorable imitation of the Omega Marks in connection with the publicity, promotion, sale, or advertising of any goods sold by Defendants; from affixing, applying, annexing or using in connection with the sale of any goods, a false description or representation, including words or other symbols tending to falsely describe or represent Defendants' goods as being those of Omega, or in any way endorsed by Omega and from offering such goods in commerce; from engaging in search engine optimization strategies using colorable imitations of Omega's name or trademarks; and from otherwise unfairly competing with Omega.

      b.      Entry of temporary, preliminary, and permanent injunctions pursuant to 28 U.S.C. § 1651(a), The All Writs Act, and the Court's inherent authority, enjoining Defendants and all third parties with actual notice of an injunction issued by the Court from participating in, including providing financial services, technical services or other support to, Defendants in connection with the sale and distribution of non-genuine goods bearing and/or using counterfeits of the Omega Marks.

      c.      Entry of an order pursuant to 28 U.S.C. § 1651(a), The All Writs Act, and the Court's inherent authority that upon Omega's request, those acting in concert or participation as service providers to Defendants, who have notice of the injunction, cease hosting, facilitating access to, or providing any supporting service to any and all e-commerce stores, including but not limited to their E-commerce Store Names, through which Defendants engage in the promotion, offering for sale and/sale of goods bearing and/or using counterfeits and/or infringements of the Omega Marks

d.      Entry of an order pursuant to 15 U.S.C. § 1116, 28 U.S.C. § 1651(a), The All Writs Act, and the Court's inherent authority, that, upon Omega's request, Defendants and the top level domain (TLD) Registry for the E-commerce Store Names, including backend registry operators or administrators, place the E-commerce Store Names on Registry Hold status for the remainder of the registration period for any such domain name, thus removing them from the TLD zone files which link the E-commerce Store Names, or disable and/or cease facilitating access to the E-commerce Store Names, and any other e-commerce store name or domain names being used and/or controlled by Defendants to engage in the business of marketing, offering to sell, and/or selling goods bearing counterfeits and infringements of the Omega Marks, to the IP addresses where the associated e-commerce stores or websites are hosted.

e.      Entry of an order pursuant to 28 U.S.C. § 1651(a), The All Writs Act, and the Court's inherent authority, canceling for the life of the current registration or, at Omega's election, transferring the E-commerce Store Names, and any other e-commerce store names or domain names used by Defendants to engage in their counterfeiting of the Omega Marks, to Omega's control so they may no longer be used for unlawful purposes.

f.      Entry of an order pursuant to 28 U.S.C. § 1651(a), The All Writs Act, and the Court's inherent authority authorizing Omega to upload new files to the Intermediary E-commerce Store Names for the purpose of preventing further redirections and identifying all of the e-commerce stores used by Defendants in connection with the sale of counterfeit and infringing Omega-branded goods that reroute to the payment Intermediary E-commerce Store Names.

g.      Entry of an order pursuant to 28 U.S.C. § 1651(a), The All Writs Act, and the Court's inherent authority, authorizing Omega to serve an injunction issued by the Court on any e-mail service provider with a request that the service provider permanently suspend the e-

mail addresses which are or have been used by Defendants in connection with Defendants' promotion, offering for sale, and/or sale of goods using counterfeits, and/or infringements of the Omega Marks.

h.       Entry of an order pursuant to 28 U.S.C. § 1651(a), The All Writs Act, and the Court's inherent authority authorizing Omega to serve the injunction on the e-commerce store registrar(s) and/or the privacy protection service(s) for the E-commerce Store Names to disclose to Omega the true identities and contact information for the registrants of the E-commerce Store Names.

i.       Entry of an order pursuant to 28 U.S.C. § 1651(a), The All Writs Act, and the Court's inherent authority, that, upon Omega's request, any Internet marketplace website operators and/or administrators, registrars, TLD Registries, and/or the privacy protection services for the E-commerce Store Names, who are provided with notice of an injunction issued by the Court, identify any e-mail address known to be associated with Defendants' respective E-commerce Store Names.

j.       Entry of an order pursuant to 28 U.S.C. § 1651(a), The All Writs Act, and the Court's inherent authority, authorizing Omega to request any Internet search engines which are provided with notice of the order, to permanently disable, de-index or delist all URLs of the E-commerce Store Names by Defendants to promote, offer for sale and/or sell goods bearing counterfeits and/or infringements of the Omega Marks, based upon Defendants' unlawful activities being conducted via the E-commerce Store Names as a whole and via the URLs identified by Omega.

k.       Entry of an order pursuant to 15 U.S.C. § 1116 and the Court's inherent authority, requiring Defendants, their agent(s) or assign(s), to assign all rights, title, and interest,

to their E-commerce Store Name(s), and any other e-commerce store names being used by Defendants to engage in the business of marketing, offering to sell, and/or selling goods bearing counterfeits and infringements of the Omega Marks, to Omega and, if within five (5) days of entry of such order Defendants fail to make such an assignment, the Court order the act to be done by another person appointed by the Court at Defendants' expense, such as the Clerk of Court, pursuant to Federal Rule of Civil Procedure 70(a).

l.      Entry of an order pursuant to 15 U.S.C. § 1116 and the Court's inherent authority, requiring Defendants, their agent(s) or assign(s), to instruct in writing, all search engines to permanently delist or deindex the E-commerce Store Name(s), and any other e-commerce store names or domains names being used by Defendants to engage in the business of marketing, offering to sell, and/or selling goods bearing counterfeits and infringements of the Omega Marks, and, if within five (5) days of entry of such order Defendants fail to make such a written instruction, the Court order the act to be done by another person appointed by the Court at Defendants' expense, such as the Clerk of Court, pursuant to Federal Rule of Civil Procedure 70(a).

m.     Entry of an order pursuant to 15 U.S.C. § 1116 and the Court's inherent authority, requiring, upon Omega's request, Defendants to request in writing permanent termination of any messaging services, e-commerce Store Names, usernames, and social media accounts they own, operate, or control on any messaging service and social media platform.

n.      Entry of an order requiring Defendants to account to and pay Omega for all profits and damages resulting from Defendants' trademark counterfeiting and infringing and unfairly competitive activities and that the award to Omega be trebled, as provided for under 15 U.S.C. §1117, or that Omega be awarded statutory damages from each Defendant in the amount

of two million dollars ($2,000,000.00) per each counterfeit trademark used and product type offered for sale or sold, as provided by 15 U.S.C. §1117(c)(2) of the Lanham Act.

        o.     Entry of an award pursuant to 15 U.S.C. § 1117 (a) and (b) of Omega's costs and reasonable attorneys' fees and investigative fees associated with bringing this action.

        p.     Entry of an order pursuant to 15 U.S.C. § 1116, 28 U.S.C. § 1651(a), The All Writs Act, Federal Rule of Civil Procedure 65, and the Court's inherent authority that, upon Omega's request, Defendants and any financial institutions, payment processors, banks, escrow services, money transmitters, e-commerce shipping partner, fulfillment center, warehouse, storage facility, or marketplace platforms, and their related companies and affiliates, identify, restrain, and be required to surrender to Omega all funds,, up to and including the total amount of judgment, in all financial accounts and/or sub-accounts used in connection with the E-commerce Store Names, or other alias e-commerce store names, domain names and/or websites used by Defendants presently or in the future, as well as any other related accounts of the same customer(s) and any other accounts which transfer funds into the same financial institution account(s), and remain restrained until such funds are surrendered to Omega in partial satisfaction of the monetary judgment entered herein.

        q.     Entry of an award of pre-judgment interest on the judgment amount.

        r.     Entry of an order requiring Defendants, at Omega's request, to pay the cost necessary to correct any erroneous impression the consuming public may have received or derived concerning the nature, characteristics, or qualities of Defendants' products, including without limitation, the placement of corrective advertising and providing written notice to the public.

        s.     Entry of an order for any further relief as the Court may deem just and proper.

DATED: March 6, 2026.                    Respectfully submitted,

STEPHEN M. GAFFIGAN, P.A.

By: **Stephen M. Gaffigan**
Stephen M. Gaffigan (Fla. Bar No. 025844)
Virgilio Gigante (Fla. Bar No. 082635)
T. Raquel Wiborg-Rodriguez (Fla. Bar. No. 103372)
401 East Las Olas Blvd., Suite 130-453
Ft. Lauderdale, Florida 33301
Telephone: (954) 767-4819
E-mail: Stephen@smgpa.cloud
E-mail: Leo@smgpa.cloud
E-mail: Raquel@smgpa.cloud

Attorneys for Plaintiff, Omega SA

**SCHEDULE "A"**

**[This page is the subject of Plaintiff's Motion to File Under Seal.  As such, this page has been redacted in accordance with L.R. 5.4(b)(1)]**